**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION AT LAFAYETTE**

MELISSA A. COSBY,                                )
      Plaintiff,                              )
                              )
      v.                                          )      CAUSE NO.: 4:08-CV-88-PRC
                              )
PURDUE UNIVERSITY, and                          )
PURDUE UNIVERSITY POLICE                        )
DEPARTMENT,                                      )
      Defendants.                             )

## OPINION AND ORDER

This matter is before the Court on (1) Defendants' Motion for Summary Judgment [DE 30], filed by Defendants on April 30, 2010, and (2) Defendants' Motion to Strike [DE 38], filed by Defendants on July 6, 2010. Plaintiff filed her response brief to the Motion for Summary Judgment on June 18, 2010, to which Defendants filed their reply brief on July 6, 2010.

## PROCEDURAL BACKGROUND

On November 18, 2008, Plaintiff Melissa A. Cosby, *pro se*, filed an Employment Discrimination Complaint in this Court alleging sex discrimination, harassment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., as amended by the Civil Rights Act of 1991 ("Title VII"), and disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Defendants filed an Answer on December 17, 2008.

On January 15, 2009, the Court conducted a Rule 16 Preliminary Pretrial Conference [DE 13], during which the parties orally agreed to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On April 30, 2010, Defendants filed their Motion for Summary Judgment, their brief in support, and Statement of Material Facts. Also on April 30, 2010, Defendants filed their "Notice in Compliance with *Lewis v. Faulkner* for Defendants' Motion for Summary Judgment." Plaintiff filed a response brief on June 18, 2010. Defendants filed a reply brief in support of their Motion for Summary Judgment, as well as a Motion to Strike on July 6, 2010.

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out

to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *See id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *See Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e)(2); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that the opposing party's "response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Anderson*, 477 U.S. at 255; *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231,

234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443.

## MATERIAL FACTS

The following are the facts viewed in the light most favorable to the nonmoving party.[1] The Trustees of Purdue University ("Purdue") is a corporate body created by the Indiana legislature through Indiana Code § 21-23-2-2 *et seq*. The Trustees of Purdue University operate Purdue University and have the power to "dismiss, suspend, or otherwise punish any . . . employee of the state educational institution who violates the institution's rules or standards of conduct." Ind. Code § 21-39-2-4(b). The Purdue University Police Department ("the Police Department") is a professional law enforcement department operated by Purdue University.

Plaintiff was hired by Purdue in 2000 as a police dispatcher at the Police Department. She underwent training at the Law Enforcement Academy in 2001 and began working as a uniformed patrol officer for the Police Department in early 2002.

---

[1] Local Rule 56.1(a) requires that a party opposing a motion for summary judgment submit a response that includes a "Statement of Genuine Issues" setting forth all material facts as to which a genuine issue exists and which may be litigated. Local Rule 56.1(a) further provides that the "Statement of Genuine Issues" and the facts stated therein shall set forth all material facts, with appropriate citations to discovery responses, affidavits, depositions, or other admissible evidence. In the "Statement of Genuine Issues," the nonmoving party's response is not required "to respond to each and every fact, point by point, [but] it does require that the nonmoving party submit potentially determinative facts and identify factual disputes" that may preclude summary judgment. *Fox v. Lear Corp.*, 327 F. Supp. 2d 946, 948 (S.D. Ind. 2004). Failure to include such crucial facts may be detrimental to the non-movant's case because the Court assumes the facts as claimed and supported by admissible evidence submitted by the moving party, unless they are controverted with supporting evidence by the nonmoving party. *See* L.R. 56.1(b). Plaintiff has not provided a Statement of Genuine Issues. The only evidence submitted by Plaintiff is in the form of exhibits attached to her response brief, which include numerous documents and deposition testimony. Accordingly, the Court relies on the admissible material facts in Defendants' Statement of Material Facts that are not contested by Plaintiff's exhibits.

Lieutenant Sarah Sheppard ("Lt. Sheppard") was Plaintiff's shift commander and supervisor at the Police Department and evaluated her performance as a patrol officer. Sergeant Ryan Needham ("Needham") was Plaintiff's shift sergeant during most of her time at the Police Department and was responsible for fulfilling the Lieutenant's role in his or her absence.

While Plaintiff was a patrol officer, if she was dissatisfied with a performance review or the issuance of a discipline, she could raise any concerns with her patrol Captain. If she did not agree with the Captain's decision, she could then grieve any employment decision to Purdue's Human Resources Representative, Sarah Smith.

Plaintiff previously worked with Needham at other law enforcement agencies and began a romantic relationship with him in 1998. While working at the Police Department, her relationship with Needham continued, even after he became a patrol officer with the Police Department in September 2002.

Needham was promoted to Sergeant in late 2003 or early 2004 and he was assigned to Plaintiff's shift. Plaintiff testified at her October 5, 2009 deposition that her relationship with Needham did not positively or negatively impact her job near the time that their relationship ended in late 2005. At the end of their relationship, Needham became romantically involved with another patrol officer, Kelly Colosino.

In August 2006, Needham disclosed his prior relationship with Plaintiff and his relationship with Colosino to then-Chief Gary Evans. Shortly afterwards, Plaintiff, Officer Colosino, and Needham met with Lt. Sheppard to discuss the relationships. At the meeting, Plaintiff reported to Lt. Sheppard that Needham harassed her at her home and that she wanted Needham to stop contacting her. Plaintiff also alleged that Needham harassed her through telephone calls, emails,

and text messages.  Lt. Sheppard indicated to Plaintiff that she would report the allegations to the Captain Tim Potts, despite Plaintiff's request that he not be notified of the allegations against Needham.

On August 21, 2006, Captain Potts and Lt. Sheppard met with Plaintiff and informed her that Purdue's human resources department would need to investigate her claims of harassment.  Then-Captain John K. Cox conducted an investigation into Plaintiff's allegations and Sarah Smith conducted a parallel investigation to determine whether the circumstances violated any of Purdue's policies.  After her investigation, Ms. Smith concluded that, although Plaintiff claimed that much of the harassment occurred via email and text messaging, she was unable to present evidence supporting her allegations and her claims could not be substantiated as no witness observed Needham harassing her.  Although Ms. Smith determined that there were no violations of Purdue's policy, she determined that the working relationship between Plaintiff and Needham was irreparably harmed and she recommended that Needham no longer serve as Plaintiff's supervisor and that he be disciplined for failing to maintain constructive relationships with his employees.

Captain Cox's investigation concluded that none of Plaintiff's allegations could be substantiated and that Plaintiff, Needham, and Officer Colosino all violated the Police Department's Standard Operating Procedure.  Plaintiff admitted to inappropriately using her Mobile Data Terminal ("MDT") to send a message to Needham that violated the Standard Operating Procedure.[2] Accordingly, Plaintiff received a documented Verbal Warning and a letter of expectation on

_____

[2] Plaintiff testified at her October 5, 2009 deposition that she sent Needham a message through the MDT that he needed to "[f]luck his girlfriend off duty."  Defs.' Mot. Summ J., Ex. B at 101:19.

6

November 8, 2006, that prohibited her from working shifts with either Needham or Colosino without receiving prior approval from Captain Potts or Chief Evans.

Needham and Colosino also received letters of expectations as documentation of conduct that they engaged in and that it demonstrated poor judgment that affected the workplace and both were removed from Plaintiff's shift.

In February 2007, Plaintiff responded to a call of possible drug use at a Purdue University residence hall and, contrary to the Police Department's policy, she failed to complete a report on this incident. According to the Police Department's policy, when property or drug paraphernalia is confiscated, officers are required to make a report. Plaintiff contended at her October 5, 2009 deposition that it was debatable as to whether she seized drug paraphernalia from the suspect, in the form of a smoking pipe, and she did not file a report. Plaintiff apparently destroyed the pipe without first having filled out a report. Captain Potts issued a written reprimand to Plaintiff for failure to properly document and report the case and indicated that her conduct failed to meet the standards of performance required of Police Department employees.

In March 2007, Plaintiff and other officers refused to attend a mandatory training session at the Police Department because there was a question as to whether other police officers who were not certified trainers could properly conduct the training. Lt. Sheppard later attempted to question Plaintiff about the incident, but Plaintiff refused to answer her questions because she would not show Plaintiff a copy of the complaint filed against her for failure to attend the training session, instead requesting to speak to her attorney. As a result, Plaintiff was suspended from active duty for three days for failing to answer questions in connection with the internal investigation of the incident.

On March 22, 2007, Plaintiff filed an internal complaint of harassment with Purdue's Affirmative Action/Equal Opportunity Office, alleging that she was the subject of harassment, discrimination, and retaliation. Plaintiff alleged that Needham harassed her by threatening her with termination if she reported Needham's relationship with Plaintiff and Colosino and that the Police Department's discipline of her constituted retaliation and sexual harassment.

Monica S. Bloom, the Assistant Director of Conflict Resolution, conducted the investigation of this matter and, upon completion of her investigation, concluded that Plaintiff's allegations of discrimination, harassment, and retaliation were not substantiated. Purdue's Vice President of Human Relations, Alysa Rollock, also determined that there was insufficient evidence supporting Plaintiff's allegations that she was sexually harassed, discriminated against, or retaliated against. In particular, Ms. Rollock found that Plaintiff failed or allegedly refused[3] to provide emails, recordings, or other documents that she asserted would support her allegations. Ms. Rollock recommended that Plaintiff be issued a Letter of Reprimand for knowingly filing false or malicious charges against Captain Cox, Needham, and Colosino.

Nonetheless, Ms. Rollock recommended that Needham attend a workshop on sexual relationships and harassment in the workplace and that Chief Evans prepare a Police Department policy addressing sexual and romantic relationships among members of the Police Department. Ms. Rollock also recommended that Lt. Sheppard be provided professional development opportunities in the area of supervision and that she and Plaintiff be encouraged to develop their conflict resolution skills.

_____

[3] At her October 5, 2009 deposition, Plaintiff contended that her attorney at the time tried to contact Ms. Rollock, but she would not return the attorney's calls. Further, Plaintiff alleged that she was not asked for emails as part of Purdue's investigation.

On June 5, 2007, Plaintiff filed a Charge of Discrimination with the Indiana Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of sex and retaliation. In particular, Plaintiff alleged that she was sexually harassed by Needham and was retaliated against for complaining about the harassment.

On September 4, 2007, Plaintiff received a "Letter to File" reprimanding her for two prior incidents in which she failed to report to work on time. Further, on October 25, 2007, Plaintiff was issued a Final Warning in connection with an internal investigation into MDT usage. In the Final Warning, the Department documented several instances of Plaintiff's inappropriate use of the MDT equipment by sending messages to another officer, including messages such "I just got humped by 3 fireman at once". Defs.' Mot. Summ. J., Ex. B at Exhibit H. The Final Warning reminded Plaintiff of her prior disciplinary warnings and warned that further violation of the Police Department's policies would result in her termination. At her October 5, 2009 deposition, Plaintiff did not deny sending the messages or that this conduct violated the Police Department's policy, instead providing that a majority of the Police Department engaged in similar behavior. *Id.* at 127:21-23.

On November 21, 2007, Plaintiff failed to report to work, prompting her shift sergeant to contact her to determine why she did not report to work. Plaintiff provided that she thought she was scheduled off for the Thanksgiving holiday. Following her failure to report to work, Plaintiff was terminated on December 5, 2007 for failing to meet the Police Department's performance expectations, despite having been given prior opportunities to improve her performance.

On March 18, 2008, Plaintiff filed a second Charge of Discrimination with the Indiana Civil Rights Commission and the EEOC, alleging sex discrimination and retaliation. In particular,

Plaintiff alleged disparate treatment and retaliation following her June 5, 2007 Charge of Discrimination.

The EEOC issued a Determination to Plaintiff on June 18, 2008, related to her June 5, 2007 Charge. The EEOC informed Plaintiff that it concluded that evidence obtained in its investigation of Plaintiff's Charge indicated that Purdue retaliated against her when she complained of sex discrimination and there was reasonable cause to believe that Purdue violated Title VII. The EEOC provided that it would continue to pursue Plaintiff's retaliation claim through its conciliation process. However, the EEOC informed Plaintiff of her right to sue as to her sex discrimination claims and that she had ninety days from the date of the letter to file a lawsuit for sex discrimination.

On August 21, 2008, the EEOC sent Plaintiff a Notice of Right to Sue letter related to her retaliation claim.

On October 7, 2008, the EEOC issued to Plaintiff a Notice of Right to Sue related to her March 18, 2008 Charge.

## ANALYSIS

In support of their Motion for Summary Judgment, Defendants contend that Plaintiff's disability discrimination claim is untimely, her Title VII disparate treatment claim is untimely and, in any event, she cannot prove a prima facie case of discrimination, retaliation, or harassment. The Court evaluates each in turn.

### A. Plaintiff's ADA Claim

In her Employment Discrimination Complaint, Plaintiff alleges a violation of the ADA. In particular, Plaintiff alleges in her Complaint that the "EEOC found cause to believe that the 1964 Civil Rights Act, as amended/and or (sic) the Americans with Disabilities Act (ADA) was violated."

Pl.'s Compl. at 2. However, the EEOC did not make any finding as to an ADA claim. Defendants argue that Plaintiff's ADA claim is not properly before the Court because she failed to include it in either of her EEOC charges.

In her response brief to the Defendants' Motion for Summary Judgment, Plaintiff fails to address this argument. Because Plaintiff fails to address this issue in her response brief, her ADA claim is waived. *See Palmer v. Marion County,* 327 F.3d 588, 597 (7th Cir. 2003) (holding that claims not addressed in a summary judgment opposition brief are deemed abandoned); *Laborers Int'l Union of N. Amer. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived).

Nonetheless, since the Plaintiff is proceeding *pro se* in this matter, in the interests of justice, the Court will evaluate the merits of whether her ADA claim is properly before this Court.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in her EEOC charge." *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *see Denson v. Village of Bridgeview*, 19 F. Supp. 2d 829, 833 (N.D. Ill. 1998) (providing that "[t]o bring a claim under the ADA, a plaintiff must first file a charge alleging the unlawful employment practice with the EEOC and receive notice of right to sue."). The purpose of this requirement is to promote the resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them. *Id.* at 500.

An ADA "plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009). Further, ADA plaintiffs can litigate claims not explicitly included in the EEOC charge if the allegations fall within the scope of the plaintiff's allegations contained in the EEOC charge. *Cheek*

*v. Peabody Coal Co.*, 97 F.3d 200, 202 (7th Cir. 1996). In determining whether the allegations in the complaint fall within the scope of the EEOC charge, the Court considers whether they are "like or reasonably related to" those contained in the EEOC charge. *Id.* This is a liberal standard that is satisfied if there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claims in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation. *Teal*, 559 F.3d at 692.

Plaintiff's June 5, 2007 Charge of Discrimination alleges sex discrimination[4] and retaliation. Plaintiff's March 18, 2008 Charge of Discrimination alleges sex discrimination and retaliation. In neither of her Charges does Plaintiff make any allegation that she had a disability or that she was discriminated against on the basis of a disability. Accordingly, Plaintiff's allegation that Defendants violated the ADA is not like or reasonably related to her discrimination or retaliation allegations contained in her Charges of Discrimination.

Further, none of the Right to Sue letters that the EEOC sent to Plaintiff mention a claim for disability discrimination in this matter. Therefore, there is no reasonable relationship between the allegations in the Plaintiff's Charges and those in her Complaint, and the ADA claim cannot be reasonably expected to have been discovered in the course of the EEOC's investigation. *Teal*, 559 F.3d at 692.

Accordingly, the Court concludes that Plaintiff's ADA claim is improperly before this Court as it was not included in Plaintiff's EEOC Charges. Therefore, summary judgment must be granted in Defendants' favor on Plaintiff's ADA claim.

---

[4] Although Plaintiff alleges in the Charge that she has been "sexually harassed", her allegations focus on retaliation and discrimination. For example, Plaintiff alleges that she was suspended for insubordination for failure to attend baton training, while another officer who did not attend was not disciplined. Further, in its June 18, 2008 Determination, the EEOC characterized Plaintiff's claims as sex discrimination and retaliation.

## B. Plaintiff's Claims under Title VII

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). In her Complaint, Plaintiff alleges sex discrimination, retaliation, and hostile work environment. The Court evaluates each in turn.

*1. Plaintiff's Sex Discrimination Claim*

As a preliminary matter, Defendants argue that the discrimination claims that were, or could have been, brought in Plaintiff's June 5, 2007 Charge are untimely. "A civil action alleging a Title VII violation must be filed within 90 days of receiving a right-to-sue notice from the EEOC." *Threadgill v. Moore U.S.A., Inc.*, 269 F.3d 848, 849-50 (7th Cir. 2001). Compliance with the 90-day limit is not a jurisdictional prerequisite, but rather, is a condition precedent to relief that begins to run when the plaintiff receives actual notice from the EEOC of the right to sue. *Id.* Here, the EEOC Determination is dated June 18, 2008. In the Determination, the EEOC informed Plaintiff that she had ninety days within which to file a suit as to her sex discrimination allegations or her right to sue would be lost. Plaintiff filed the instant suit on November 18, 2008, more than ninety days after receiving the June 18, 2008 Determination. "The time limit is not flexible, even for pro se litigants, and a one-day delay is fatal." *Davis v. Browner*, 113 F. Supp. 2d 1223, 1226 (N.D. Ill. 2000). Therefore, her sex discrimination claims related to the allegations in her June 5, 2007 Charge are untimely. Nonetheless, in the interests of justice the Court will consider the merits of Plaintiff's claims as if they were timely filed.

A plaintiff may meet her burden of proof for a discrimination claim under Title VII by offering direct evidence of the defendant's discriminatory intent or by proving disparate treatment through the indirect method. *Contreras v. Suncast Corp.*, 237 F.3d 756, 759 (7th Cir. 2001). Under the direct method, the plaintiff must show either through direct or circumstantial evidence that the employer's decision to take the adverse employment action was motivated by an impermissible animus, such as the plaintiff's sex. *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 938-39 (7th Cir. 2003). Where a plaintiff fails to establish discrimination under the direct method, the plaintiff may still meet her burden through showing discriminatory treatment under the indirect, burden-shifting method. *Contreras*, 237 F.3d at 759. Under the burden-shifting method, established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the plaintiff has the initial burden of establishing a prima facie case of sex-based discrimination. *Farrell v. Butler Univ.*, 421 F.3d 609, 613 (7th Cir. 2005).

To establish a prima facie case under *McDonnell Douglas*, a plaintiff must show that (1) she is a member of a protected class; (2) she was performing her job according to the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated more favorably by the employer. *Atanus v. Perry*, 520 F.3d 662, 672-73 (7th Cir. 2008). If the plaintiff establishes her prima facie case, then the defendant must state a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant offers a legitimate, non-discriminatory reason, then the burden shifts back to the plaintiff to come forward with evidence showing that the stated reason is pretextual. *Id.* at 804.

Plaintiff's Employment Discrimination Complaint reveals that Plaintiff has failed to allege any facts showing direct evidence of discrimination. Therefore, Plaintiff must proceed under the indirect, burden-shifting method.

Defendants concede that, as a woman, Plaintiff is a member of a protected class and that she suffered an adverse employment action by being terminated on December 5, 2007. However, Defendants contend that Plaintiff is unable to show that she was meeting Defendants' legitimate job expectations or that they treated similarly situated individuals outside of the protected class more favorably.

First, when evaluating whether a plaintiff was performing her job according to the employer's legitimate expectations, the Court evaluates the plaintiff's performance "through the eyes of her supervisors at the time of her . . . termination." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689 (7th Cir. 2008). Here, the evidence of record supports that Plaintiff was disciplined for several infractions. On November 8, 2006, Plaintiff received a documented verbal warning for improper use of the MDT equipment and, at her October 5, 2009 deposition, Plaintiff admitted engaging in that conduct and that it violated the Police Department's policy. Plaintiff also received a letter of expectation. Further, on February 9, 2007, Plaintiff received a written warning for failing to meet the standards of performance and behavior required of Police Department employees related to her failure to complete a police report on a call of possible drug use in a residence hall. Plaintiff did not disagree that she failed to fill out a report, but instead, at her October 5, 2009 deposition testified that it is debatable as to whether she needed to fill out a report.

Next, Plaintiff was suspended for three days in March 2007 for failing to comply with the Police Department's policies when she failed to answer Lt. Sheppard's questions during an

15

investigation as to Plaintiff's failure to attend baton training. On September 4, 2007, Plaintiff was issued a letter to file because she failed to report to work on time and failed to advise the Police Department that she would be absent or late. Further, on October 25, 2007, Plaintiff received a Final Warning for continuing to violate Purdue's policies and procedures regarding the inappropriate MDT usage and Defendants informed her that any additional violations would result in termination. Plaintiff did not deny engaging in this conduct at her October 5, 2009 deposition, instead arguing that a majority of the Police Department engaged in similar behavior. Finally, Plaintiff failed to report to work on November 21, 2007, and she was terminated on December 5, 2007 for repeated violations of Purdue's policies and procedures and failed to meet performance expectations. Based on these circumstances, the evidence of record does not support that Plaintiff was meeting Defendants' legitimate job expectations at the time that she was terminated. *See Waggoner v. Olin Corp.*, 169 F.3d 481, 483 (7th Cir. 1999) (providing that "[i]t should not require saying that generally attendance is a requirement of a job."); *Coppage v. Illinois Bell Telephone Co.*, No. 08-1143, 2009 WL 3460457, at *3 (C.D. Ill. Oct. 22, 2009) (finding that a plaintiff failed to show that he met his employer's legitimate performance expectations due to attendance issues).

In her response brief, Plaintiff does not argue that she was meeting the Defendants' legitimate expectations. Rather, Plaintiff instead directs the Court to different documents and deposition transcripts that she filed along with her response brief that supposedly support her claims. However, Plaintiff fails to explain which of the numerous documents contain information showing, or how they show, that she met the Defendants' legitimate expectations. "A lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts *nor district courts* are 'obliged in our adversary system to scour the record looking

for factual disputes . . . .'" *Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1993)) (emphasis added). Failing to address this issue in her response brief or direct the Court to evidence indicating that she met Defendants' legitimate expectations, Plaintiff has failed to raise a genuine issue of material fact as to whether she met the Defendants' legitimate expectations.[5]

Next, even if Plaintiff was able to show that she was meeting Defendants' legitimate expectations, she still must show that similarly situated employees outside of the protected class were treated more favorably. A plaintiff may demonstrate that another employee is similarly situated by showing that the other employee is directly comparable to the plaintiff in all material respects. *Bottoms v. Ill. Dep't of Human Servs.*, 281 F. App'x 561, 564 (7th Cir. 2008). In this context, a similarly situated employee is one who shared the same supervisor, performance standards, and engaged in similar conduct to plaintiff without such differentiating or mitigating circumstances that would "distinguish their conduct or the employer's treatment of them." *Peirick v. Indiana Univ.-Purdue Univ.,* 510 F.3d 681, 688 (7th Cir. 2007).

At her October 5, 2009 deposition, Plaintiff alleged that she was treated differently than other employees who also failed to attend the mandatory training, after which she was suspended when she failed to answer Lt. Sheppard's questions during the subsequent investigation. However, she

---

[5] Plaintiff attached as exhibits to her response brief copies of some of her performance evaluations. After reviewing the evaluations, the Court concludes that they do not create a genuine issue of material fact. First, the performance evaluations from the rating periods of July 2002 through June 2003, July 2004 through June 2005, and January 2006 through March 2006, although favorable to the Plaintiff, predate the conduct for which she received discipline. Next, although the performance evaluation from the rating period of November 27, 2006 through December 31, 2006, indicates that Plaintiff received a favorable review, her performance evaluation from July 2006 through June 2007 noted that she needed improvement in acceptance of feedback and in relationships with other department members, as well as noting her failure to file a report as required by the Police Department and allegedly filing false charges against other members of the department.

admitted that she did not know if anyone else failed, or refused, to answer questions in the ensuing investigation.

Further, although Plaintiff alleged that she was treated differently regarding her use of the MDT equipment after sending inappropriate messages, she testified that she did not know who else was disciplined and thought that it was "probably" just her. *See* Defs.' Mot. Summ. J., Ex. B 102:18. Plaintiff also alleged that in being disciplined for failing to make a report when she responded to a call of possible drug use and recovered a smoking pipe, she was treated differently than other officers who made similar arrests. In particular, Plaintiff claims that Officer Mike Boesch, Jr. was involved in a similar situation in that he seized a marijuana pipe from a suspect and Lt. Sheppard told him to destroy it and he did not make an arrest. There is no indication from the record, however as to whether, like Plaintiff, he failed to file a report. Plaintiff also claims that Officer John Goetz was involved in similar circumstances but did not have information regarding the incident. Therefore, the Court cannot conclude that Officer Goetz is similarly situated to Plaintiff.

Plaintiff also testified at her October 5, 2009 deposition that she was denied opportunities to participate in field training officer assignments, while male officers were given such opportunities. However, Plaintiff testified that she did not know if other officers were given assignments when they were in progressive discipline. Plaintiff also alleged that the individuals investigating her allegations of harassment failed to properly investigate her claims. In particular, Plaintiff alleges that Ms. Rollock treated her differently than male complainants during the investigation in that she would not let Plaintiff speak and would not take her complaints. However,

Plaintiff provided that she was guessing that Ms. Rollock allowed Chief Evans and Needham to speak because of their rank over her and gender.

Plaintiff also alleged at her deposition that she was treated differently in being disciplined for failure to report to work on time while two other officers, Gabe Argerbright and Nick,[6] were also repeatedly late. Plaintiff provided that she did not know whether Officer Argerbright was issued a letter for being late and was unaware whether Nick was disciplined. Nonetheless, Plaintiff provided that Officer Argerbright "laughed it off and said nothing ever happened to him, [and] they just told him not to do it again" and that she was told, regarding Nick, that Defendants "didn't think it was that big of a deal." Defs.' Mot. Summ. J., Ex. B 174:17-19, 22-23. However, Plaintiff has not provided any evidence as to their disciplinary history.[7]

In her response brief, Plaintiff contends that the attached deposition transcripts to her brief will show that other officers were late numerous times and were not reprimanded at all, or to the extent that Plaintiff was. However, Plaintiff fails to direct the Court to any specific portion of the deposition transcripts supporting her allegations and the Court is not required to scour the record to search for this evidence. *See Greer*, 267 F.3d at 727. "A court need not make the [plaintiff's] case." *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995); *see Oest v. Illinois Dept. of*

---

[6] Plaintiff testified that she did not know Nick's last name.

[7] Further, to the extent that Plaintiff claimed at her deposition that she requested Officer Argerbright's personnel file and did not receive it, Plaintiff did not notify the Court and has not filed a motion to compel.

To the extent that Plaintiff alleges that she was treated differently when she was required to take additional taser training while other male officers who also used tasers were not, she has failed to identify any other officer, other than Lt. Sheppard, involved in a similar situation. However, Lt. Sheppard is not similarly situated to Plaintiff as she is in a different position. *See Hoffman-Dombrowski v. Arlington Intern. Racecourse, Inc.*, 254 F.3d 644, 651 (7th Cir. 2001) (deciding that a comparator was not similarly situated to the plaintiff where they did not hold the same or equivalent positions). Also, while Plaintiff argues that she had to respond to more calls than her male counterparts, she failed to identify any of the male counterparts and the Court cannot determine if they are similarly situated to Plaintiff.

*Corrections*, 240 F.3d 605, 615 (7th Cir. 2001) (providing that a plaintiff must offer specific evidence and not just conclusory assertions that other employees are similarly situated).

Plaintiff alleges that Captain Potts testified during his February 15, 2010 deposition that she was the only officer who was subjected to a psychological evaluation. However, Captain Potts specifically testified that one other officer was also required to do so. Plaintiff alleges that Officer Michael Boesch testified at his February 8, 2010 deposition that Plaintiff was discriminated against or treated differently than male officers. While he testified that he believed that Lt. Sheppard retaliated against Plaintiff, he also provided that he did not know Plaintiff's disciplinary history and that he was not involved in meetings regarding punishment for inappropriate use of the MDT equipment.

Plaintiff also contends that Officer Goetz testified during his February 8, 2010 deposition that he was involved in a domestic dispute with his wife while he was on duty and was not disciplined. According to his deposition testimony, and Officer Boesch's, Officer Goetz and his wife had an argument and things got blown out of proportion after a third party called the police. Officer Goetz took the rest of the day off and met with Captain Potts to discuss what was going on. Plaintiff has failed to show how this is similar to any of the conduct that she engaged in so that the Court could conclude that Officer Goetz is similarly situated to her.

Next, Plaintiff contends that Needham admitted at his deposition to being romantically involved with numerous subordinates and was disciplined for similar incidents at his *previous* employer. However, she fails to explain how this is relevant to showing that they engaged in similar conduct and are similarly situated. Plaintiff also argues that Officer Argerbright admitted during his February 15, 2010 deposition that he reported to work late at least five times and was not

disciplined.  However, Plaintiff's characterization of Officer Argerbright's testimony is incorrect as he testified to being late five times and he received a written reprimand in the form of a letter.

Therefore, Plaintiff has failed to show that these individuals are similarly situated.  *See Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 350 n. 3 (7th Cir. 1997) (providing that parties are not similarly situated where they do not engage in all of the same misconduct); *Taffe v. Illinois Dept. of Employment Sec.*, 229 F. Supp. 2d 858, 869 (N.D. Ill. 2002) (finding that employees were not similarly situated where they held different positions and were disciplined for different types of conduct).  Accordingly, Plaintiff has failed to establish a genuine issue of material fact as to whether similarly situated employees outside of the protected class were treated more favorably than her.  Therefore, summary judgment must be granted in Defendants' favor.

Even assuming that Plaintiff is able to show a prima facie case of gender discrimination, she would still have to show that Defendants' legitimate reasons for terminating her were a pretext for discrimination.  Pretext means a lie or phony excuse.  *O'Neal v. City of New Albany*, 293 F.3d 998, 1005 (7th Cir. 2002).  A plaintiff can establish pretext with evidence that the employer's explanation is not credible.  *Atanus*, 520 F.3d at 674.  The focus of this inquiry is whether the employer's stated reason was honest, not whether it was accurate or wise.  *Lochard v. Provena St. Joseph Med. Ctr.*, 367 F. Supp. 2d 1214, 1224 (N.D. Ill. 2005).

Based on the record, Plaintiff cannot show that Defendants' reasons for terminating her, based on her numerous violations of their policies and procedures and failure to improve her performance, were pretext for discrimination.[8]

---

[8] While Plaintiff generally directs the Court to her "Timeline (sic) of Events" that she has attached as an exhibit to her response brief, the "Timeline" is her recitation of the events that occurred leading up to, and after, her termination.  "[I]n opposing a motion for summary judgment under Rule 56, Plaintiffs may rely upon sworn affidavits . . . [but] *[t]hey may not rely upon their own unsworn statements.*"  *Loch v. Board of Educ. of*

Therefore, based on the foregoing, Plaintiff fails to create a genuine issue of material fact regarding her prima facie case of sex discrimination and summary judgment must be granted in Defendants' favor as to her Title VII sex discrimination claim.

*2. Plaintiff's Retaliation Claim*

Next, Plaintiff alleges that Defendants retaliated against her after she filed complaints for sex discrimination, harassment, and hostile work environment. Under Title VII, it is unlawful for an employer to "discriminate against" an employee "because [s]he has opposed any practice made an unlawful employment practice" by the statute or "because [s]he has made a charge, testified, assisted, or participated in" a Title VII "investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). An employee can establish a prima facie case of retaliation by proceeding under either the direct or indirect method. *Roney v. Illinois Dept. of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007).

Plaintiff fails to argue that she has direct evidence of retaliation and, having reviewed the evidence of record, the Court does not find admissible evidence supporting that she may proceed under the direct method.[9]

Under the indirect method, the plaintiff must show that (1) she engaged in a statutorily protected activity, (2) she met her employer's legitimate expectations, (3) despite her satisfactory performance, she suffered a materially adverse employment action, and (4) she was treated less

---

*Edwardsville Community School Dist. No. 7*, No. 06-CV-0017-MJR, 2008 WL 2414864, at *1 (S.D. Ill. June 12, 2008) (emphasis added). As the Timeline is not a sworn statement, Plaintiff may not rely on it to attempt to create a genuine issue of material fact in this matter. *See Tye v. Chertoff*, No. 03 C 5931, 2006 WL 2861980, at *4 (N.D. Ill. Sept. 29, 2006) (providing that a party may not rely on an unsworn statement).

[9] The only argument that Plaintiff makes in her response brief concerning retaliation is by directing the Court to the June 18, 2008 Determination letter in which the EEOC indicated that it found reasonable cause to believe that Defendants retaliated against her. However, the EEOC did not provide any factual basis for its finding. Further, Plaintiff fails to cite any case law supporting that an EEOC finding is dispositive of whether an employer has violated Title VII, nor is the Court able to find any law in support. Therefore, Plaintiff's reliance on the EEOC Determination in support of her retaliation claim is misplaced.

favorably than similarly situated employees who did not engage in statutorily protected activity. *Benitez v. American Standard Circuits, Inc.*, 678 F. Supp. 2d 745, 761 (N.D. Ill. 2010). A plaintiff's failure to satisfy any one element of the prima facie case is fatal to her retaliation claim. *Roney*, 474 F.3d at 459.

If the plaintiff establishes a prima facie case of retaliation, then the burden shifts to the defendant to articulate a nondiscriminatory reason for its actions. If the defendant meets this burden, then the plaintiff must show that the proffered reason is pretextual.

Under the indirect method, as discussed in relation to Plaintiff's sex discrimination claim, because Plaintiff has failed to show that she met the Defendants' legitimate expectations and is unable to show similarly situated employees who were treated more favorably, her prima facie case fails. Therefore, Plaintiff has failed to raise a genuine issue of material fact regarding her retaliation claim and summary judgment must be granted in the Defendants' favor.

*3. Plaintiff's Hostile Work Environment Claim*

"A hostile environment claim falls under the general rubric of harassment at the workplace, which can amount to prohibited discrimination in terms and conditions of employment." *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002). To survive summary judgment on a hostile work environment sexual harassment claim, a plaintiff must establish that "(1) she was subjected to unwelcome sexual harassment; (2) the harassment was based on her sex; (3) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile or offensive working environment that seriously affected her psychological well-being; and (4) there is a basis for employer liability." *Moser v. Indiana Dept. of Corrections*, 406 F.3d 895, 902 (7th Cir. 2005). "Federal civil rights laws do not exist to ensure that employees enjoy workplaces that are

free from profanity or incivility; to be actionable, the conduct must either have a discriminatory character or purpose." *Mokry v. Partylite Worldwide, Inc.*, No. 07 C 0972, 2009 WL 2588888, at *16 (N.D. Ill. Aug. 20, 2009) (Slip Copy). "Title VII protects a worker against conduct which is sufficiently severe or pervasive that a reasonable person would find it hostile and which the victim [her]self subjectively sees as abusive." *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008).

Courts examine a variety of factors when evaluating whether a workplace is hostile, including the frequency of the supposed discriminatory conduct; its severity; whether the conduct is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's job performance. *Id.*

At her October 5, 2009 deposition, Plaintiff alleged that Captain Potts created a hostile work environment by failing to take her side in disputes with Lt. Sheppard and, in particular, yelling at her when Lt. Sheppard was around and screaming at her over her failure to attend baton training. Further, Plaintiff alleged that he talked to her about complaints that she made, attempting to intimidate her prior to her attending meetings related to Purdue's investigation of her claims. Plaintiff fails to indicate the frequency of Captain Potts yelling at her. "[I]solated and innocuous incidents will not support a hostile environment claim." *McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 480 (7th Cir. 1996). Further, Plaintiff has failed to show that this conduct is objectively hostile. *Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 678 (7th Cir. 2005) (providing that where the plaintiff alleged that co-workers used vulgar language in her presence, occasionally cursed at her and yelled at her, she failed to show an objectively offensive work environment).

Plaintiff also alleged that Chief Evans harassed her by forcing her to go on light duty and making her take a fitness for duty exam, which caused her to suffer embarrassment as her co-workers wanted to know why and started rumors. However, Plaintiff has failed to provide evidence as to what the rumors were, that Chief Evans started the rumors, and has failed to offer evidence in the way of establishing that her work environment could objectively be perceived as hostile because of this. *Roney*, 474 F.3d at 463. Plaintiff also contends that Captain Cox created a hostile work environment for her because he conducted both of the investigations relative to her claims instead of the Police Department conducting one investigation while Purdue conducted a separate investigation. Nonetheless, Plaintiff fails to explain how this was subjectively or objectively hostile.

Plaintiff also alleges that Sergeant John Moore failed to appear to conduct the baton training session which caused her a hostile work environment. But, Plaintiff testified that she was not saying that he did so to purposely cause her a hostile work environment. Nonetheless, her allegations are based on speculation. "[M]ere speculation or conjecture" will not defeat summary judgment. *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003). Plaintiff also claims that Sergeant Moore subjected her to a hostile work environment when he allegedly distributed to other officers copies of emails that she printed relating to her complaints. Plaintiff testified that she was aware that Sergeant Moore distributed the emails because Officer Boesch told her that Officer Argerbright told him that Sergeant Moore distributed the emails. However, Plaintiff has failed to offer evidence indicating the content of the emails or that the information that the emails contained was humiliating or personal information or that his distribution of the emails interfered with her job performance. Therefore, the allegations related to Sergeant Moore's conduct do not support her hostile work environment claim.

Next, Plaintiff alleges that Officer Kelly Colosino subjected her to a hostile work environment by failing to assist Plaintiff on a call and by sending her harassing emails. Plaintiff has failed to indicate whether Colosino's refusal to assist her on a call affected Plaintiff's job performance, what the content was of the allegedly harassing emails, or the frequency of the emails. Accordingly, Plaintiff has failed to provide the Court with information from which it can determine that the alleged conduct was subjectively and objectively hostile.

Finally, Plaintiff alleges that Needham created a hostile work environment by threatening her and screaming at her on different occasions. Particularly, Plaintiff testified at her deposition that if Needham was upset, he would take her to a location that was not close to campus so that he could yell at her. But Plaintiff has failed to indicate the frequency of this alleged conduct, the content of the threats[10] so that the Court can evaluate whether the alleged threats were physically threatening or a mere offensive utterance. "[R]elatively isolated instances of nonsevere misconduct will not support a claim of a hostile environment." *Filipovic v. K & R Exp. Systems, Inc.*, 176 F.3d 390, 398 (7th Cir. 1999).

Although the evidence reveals that other officers' conduct was unprofessional (such as Needham's conduct in maintaining romantic relationships with subordinates), and at times constituted childish and boorish behavior,[11] Title VII does not set forth a general civility code for the workplace and "does not protect an employee from trivial harms, petty slights, nor minor

---

[10] While Plaintiff has alleged in her Employment Discrimination Complaint that Needham physically entered her residence and threatened her, in the transcripts of her deposition before this Court she did not identify this conduct when discussing how Needham created a hostile work environment. Therefore, the Court finds that she has failed to provide evidence supporting that this contributed to a hostile work environment.

[11] For example, during his February 8, 2010 deposition, Officer Boesch testified that Needham would fart on Lt. Sheppard and she would chase him around the department to try to burp on him.

annoyances." *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009). Plaintiff has failed to show that any alleged harassment was because of her sex, *See Haugerud v. Amery School Dist.*, 259 F.3d 678, 692 (7th Cir. 2001) (providing that "[o]ur inquiry turns on whether the alleged harassment occurred *because of the sex of the complainant*") (emphasis added); *E.E.O.C. v. International Profit Associates, Inc.*, No. 01 C 4427, 2008 WL 4876860, at *8 (N.D. Ill. July 14, 2008) (finding that a plaintiff's hostile work environment claim failed where she could not demonstrate that the alleged severe and pervasive conduct resulted from any actions directed against her because of her sex); *Van Jelgerhuis v. Mercury Finance Co.*, 940 F. Supp. 1344, 1358 (S.D. Ind. 1996) (providing that "in order for harassment to be actionable under Title VII, *it must have occurred because of a plaintiff's sex*")(emphasis added), and has failed to provide evidence[12] indicating that the alleged harassment was objectively hostile or that it was severe or pervasive enough to interfere with her work performance. *See Andonissamy*, 547 F.3d at 847.

Accordingly, Plaintiff has failed to raise a genuine issue of material fact regarding her hostile work environment claim and summary judgment must be granted in Defendants' favor.

### C. Defendants' Motion to Strike

Given that the Court grants Defendants' Motion for Summary Judgment, the Court hereby denies as moot the Motion to Strike.

### CONCLUSION

Accordingly, based on the foregoing reasons, the Court **GRANTS** the Defendants' Motion for Summary Judgment [DE 30]. Summary judgment is hereby **ORDERED** in favor of Defendants

---

[12] Plaintiff has submitted a medical document from her doctor indicating that she developed general anxiety disorder in response to harassment by another employee. However, the doctor failed to provide any basis for this conclusion and Plaintiff "cannot defeat summary judgment by relying on unsubstantiated assertions." *Greer*, 267 F.3d at 729.

Purdue University and Purdue University Police Department. Plaintiff shall take nothing by her

Complaint in this case against the Defendants.

The Court **DENIES as moot** the Defendants' Motion to Strike [DE 38].

SO ORDERED this 16th day of July, 2010.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record
        Melissa A Cosby, 10939 E 300 N, Thorntown, IN 46071